**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FRANCIS MUNGAI )<br><br>　　　　　　Petitioner, )<br>　　　　　　　　　　　　 )<br>v. 　　　　　　　　　　 )<br>　　　　　　　　　　　　 )<br>PATRICIA HYDE, Field Office Director, )<br>TODD LYONS, Acting Director U.S. )<br>Immigrations and Customs Enforcement, )<br>and MARKWAYNE MULLIN, U.S. Secretary )<br>of Homeland Security, TODD BLANCHE, )<br>U.S. Attorney General, DONALD J. TRUMP, )<br>U.S. President )<br>　　　　　　　　　　　　 )<br>　　　　　　Respondents. )<br>　　　　　　　　　　　　 ) | Case No. 1:26-cv-11874<br><br>**PETITION FOR WRIT OF**<br>**HABEAS CORPUS** |

1. Petitioner Francis Mungai resides in Massachusetts.

2. Petitioner is a native and citizen of Kenya.

3. Petitioner was arrested in Massachusetts by U.S. Immigration and Customs Enforcement ("ICE") and/or other federal agents acting on ICE's behalf on or about April 24, 2026.

4. On information and belief, Petitioner is currently being held in ICE's custody in the District of Massachusetts.

5. Petitioner is present in the United States and, on information and belief, the Department of Homeland Security ("DHS") has not revoked Petitioner's OSUP in compliance with relevant statute and regulation, and in contravention of an order of this Court.

6. On December 19, 2025, this Court ordered the release of Petitioner, finding that ICE had not properly revoked Petitioner's order of supervised release (OSUP).

7.  Upon reason or belief, ICE did not provide Petitioner with the adequate process when revoking his OSUP and arresting him again on April 24, 2026.

8.  Upon reason and belief, ICE arrested and detains Petitioner to effectuate his removal.

9.  Petitioner is being irreparably harmed by his ongoing unlawful detention without a bond hearing.  *See Aguiriano*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

10. There is no statutory requirement for Petitioner to exhaust administrative remedies.  *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not require by statute in this context.").

11. Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition.  *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

20. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

21. Venue is proper because Petitioner resides in Massachusetts, was initially detained in Massachusetts, and on information and belief is still detained within the District of Massachusetts.

22. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration

and Customs Enforcement.

23. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

24. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security.

25. Respondent Todd Blanche is the U.S. Attorney General.

26. Respondent Donald J. Trump is the President of the United States.

27. All respondents are named in their official capacities.  One or more of the respondents is Petitioner's immediate custodian.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fourth Amendment Reasonable Search and Seizure

1. The allegations in the above paragraphs are realleged and incorporated herein.

2. The Department arrested and detained Petitioner in violation of his right to be free from unreasonable search and seizure. A party claiming a Fourth Amendment violation must establish both that a seizure occurred and that the seizure was unreasonable. *Sodal v. Cook County* 506 U.S. 56, 71 S. Ct. 538, 121 L. Ed. 2d 450 (1992).  A seizure is unreasonable if a balance of public and private interests implicated by the seizure favors the asserted private interest. *Id.* Petitioner asserts a private interest to apply for lawful status in the United States. The Department has not yet asserted a reason for detaining Petitioner. The balance of Petitioner's asserted private interest outweighs the government interest.

3. For these reasons, Petitioner's arrest and detention violates the Fourth Amendment.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process

4. The allegations in the above paragraphs are realleged and incorporated herein.

5.    The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

6.    To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691.

7.    Respondents violated their own regulations and did not provide Mr. Munagi with adequate notice and a meaningful opportunity to be heard, thereby also violating due process. *See Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (cleaned up) ("[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

8.    Petitioner is neither a danger nor a flight risk. The detention of Petitioner is arbitrary on its face.

9.    Mr. Munagi has dutifully complied with every condition of his OSUP and no change in circumstances exists to warrant the revocation of his OSUP.

10.    In detaining Petitioner, Respondents took advantage of Petitioner's good faith efforts to comply with law enforcement. The violative actions of the Respondents undermine the faith of noncitizens that they should follow the law and appear to immigration check-ins.

11.    Because Petitioner's detention has been unaccompanied by the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention is unlawful.

## COUNT THREE
### Release on Bail Pending Adjudication

12.     Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

13.     Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting *Mapp*, 241 F.3d at 230) (cleaned up).

14.     This petition raises constitutional and statutory claims challenging the Petitioner's detention. Upon reason and belief, the Petitioner fears his transfer to a detention facility outside of Massachusetts, where his remote location would prevent him from adequately litigating his removal and bond proceeding by limiting his access to counsel and evidence located within the District of Massachusetts.

**COUNT FOUR**
**Violation of the Administrative Procedure Act**

15.     The allegations in the above paragraphs are realleged and incorporated herein.

16.     The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement

the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The Accardi doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

17.    A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

18.    The government arresting at a check-in Petitioner after he had complied with previous check-in requirements outside of detention is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

19.    Revoking a noncitizen's check-in procedure and incarcerating that person without notice or process constitutes an unlawful change in policy that is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

20.    The APA authorizes courts to "set aside" agency action that is "in excess of statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).  It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions."  *Id* at § 706. Courts perform this review *de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

21.     Here, the governing statute orders the executive to promulgate regulations that require noncitizens on supervised orders of release to do four things. 8 U.S.C § 1231(a)(3). Those requirements include appearing before an immigration officer periodically for identification, submitting, if necessary, to medical and psychiatric examination at the expense of the U.S. government, giving information under oath about the alien's nationality, circumstances, habits, associations, and other information the Attorney General considers appropriate, and obeying reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the noncitizen. 8 U.S.C § 1231(a)(3)(A), (B), (C), (D).

22.     The regulations promulgated pursuant to 8 U.S.C § 1231(a)(3) go beyond the scope of statutory authority. Here, the governing regulations provide for the continued detention beyond the removal period. 8 C.F.R. § 241.4. Detaining a noncitizen, however, is an *ultra vires* action, not enumerated in 8 U.S.C § 1231(a)(3). When circumstances support a sensible inference that a term left out must have meant to be excluded, courts apply the canon of *expressio unius* statutory interpretation. *See NLRB v. SW Gen., Inc.* 580 U.S.  288, 301 (2017) (the inclusion of certain statutory provisions comes at the necessary exclusion of others). The statute considers the restraints the executive may place on a noncitizen *after releasing* that person from detention. *See* 8 U.S.C § 1231(a)(3). The relevant section of statute does not contemplate re-detention at all. *Id*. It is sensible to infer that in the context of restrictions affecting a person released from detention, including certain restrictions that fall short of detention excludes detention as an authorization of statute.

23.     Because the regulations governing detention after the government releases a

7

noncitizen on supervised release come in excess of statutory jurisdiction, authority, or limitations, this court should set those regulations aside. Without those regulations, the Respondents have no authority to detain Petitioner.

**COUNT FIVE**
**Violation of Federal Statute – 8 U.S.C. § 1231**

24. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

25. A noncitizen's continued detention beyond the removal period is distinguishable from re-detention following their release from ICE custody.

26. Because DHS released Petitioner on supervised release in 2014, upon his arrest in April, 2026 ICE did not continue his detention but rather initiated a new detention (*i.e.*, re-detained the Petitioner).

27. ICE was not authorized to re-detain Petitioner pursuant to 8 U.S.C. § 1231(a)(6).

28. Section 1231(a)(6) provides that:

An alien ordered removed who is inadmissible under *section 1182* of this title, removable under *section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)* of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may* be detained *beyond* the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)].

8 U.S.C. § 1231(a)(6) (emphasis added).

29. Section 241.4 of Title 8 of the Code of Federal Regulations provides that:

(a) Scope. The authority *to continue an alien in custody* or grant release or parole under sections 241(a)(6) and 212(d)(5)(A) of the Act shall be exercised by the Commissioner or Deputy Commissioner, as follows: Except as otherwise directed by the Commissioner or his or her designee, the Executive Associate Commissioner for Field Operations (Executive Associate Commissioner), the Deputy Executive Associate Commissioner for Detention and Removal, the Director of the Detention and Removal Field Office or the district director may *continue an alien in custody beyond the removal period* described in section 241(a)(1) of the Act pursuant to the procedures described in this section. Except as provided for in paragraph (b)(2) of

this section, the provisions of this section apply to the custody determinations for the following group of aliens:

(1) An alien ordered removed who is *inadmissible under section 212* of the Act, including an excludable alien convicted of one or more aggravated felony offenses and subject to the provisions of section 501(b) of the Immigration Act of 1990, Public Law 101–649, 104 Stat. 4978, 5048 (codified at 8 U.S.C. 1226(e)(1) through (e)(3)(1994));

(2) An alien ordered removed who is removable under *section 237(a)(1)(C)* of the Act;

(3) An alien ordered removed who is removable under *sections 237(a)(2)* or *237(a)(4)* of the Act, including deportable criminal aliens whose cases are governed by former section 242 of the Act prior to amendment by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Public Law 104–208, 110 Stat. 3009–546; and

(4) An alien ordered removed who the decision-maker determines is *unlikely to comply with the removal order or is a risk to the community*.

8 C.F.R. 241.4 (emphasis added).

30.     Section 1231(a)(6) and its concomitant regulation, 8 C.F.R. § 241.4, only authorize the *continuation* of the detention of noncitizen beyond the removal period where the noncitizen had been in custody at the time of the entry of his removal order or was detained during the removal period pursuant to 8 U.S.C. § 1231(a)(2) and 8 C.F.R. § 241.3.

31.     Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025)

9

("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

32.    Section 1231(a)(6) and 8 C.F.R. § 241.4 do not authorize the re-detention of a noncitizen, like Petitioner, who was previously released from custody unless the government shows by clear and convincing evidence that the noncitizen has become a danger to the community or flight risk. *See Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2411010, at *8 (E.D. Cal. Aug. 20, 2025) (holding that the government "[could] not *re-detain* petitioner unless [it] proves by clear and convincing evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the community" where the noncitizen, despite having a reinstated removal order, was previously released from custody (emphasis added)); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's *re-detention* without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." (emphasis added)).

**COUNT SIX**
**Violation of Federal Regulations – 8 C.F.R. § 241.4**

33.    On information and belief, Respondents arrested and currently detain Petitioner without cause, violating his constitutional rights to due process of law, and violating the Federal Regulations controlling revocation of Supervised Orders of Release.

34.    Petitioner followed all the requirements of his release notification and Order of Supervision. Yet, petitioners took him into custody and detained him on April 24, 2026, despite his reporting to ICE in accordance with the release requirements and ICE holding him in the past with no deportation following.

35.    Petitioner did not receive a Notice of Revocation of Release and Respondents

therefore did not address the necessary revocation elements under 8 C.F.R. § 241.4, thereby making the means of revocation insufficient under the regulations, warranting his release.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1)   Assume jurisdiction over this matter;

(2)   Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3)   Declare that Petitioner's detention and arrest violates the Fourth Amendment, the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231, and the Administrative Procedure Act;

(4)   Issue a Writ of Habeas Corpus ordering Respondents to immediately release petitioner, and, in the interim preventing his transfer outside of the District.

(5)   Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6)   Grant any further relief this Court deems just and proper.

Respectfully submitted,

Francis Munagi

By and through his counsel,

Dated: 4/24/2026

/s/ *Todd C. Pomerleau*
Todd C. Pomerleau
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com

MA BBO#664974